# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TONY LOVE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 4612 |
| | ) | |
| THOMAS DART, in his capacity as | ) | |
| Sheriff of Cook County, DR. R. | ) | Judge Rebecca R. Pallmeyer |
| LEDVORA, DR. C. ZAWITZ, | ) | |
| MANISHA PATEL, BARBARA DAVIS, | ) | |
| OFFICER VALDEMAR RAMOS, | ) | |
| OFFICER E. VILLARREAL, MS. G. | ) | **JURY TRIAL DEMANDED** |
| MAEWEATHER, CYNTHIA JONES, | ) | |
| KIMBERLY COOPER, ANDREW | ) | |
| DEFUNIAK, JANET WATTS, DR. C. | ) | |
| COLVARD, CALVIN FLOWERS, JOHN | ) | |
| DOE EMPLOYEES OF THE COOK | ) | |
| COUNTY DEPARTMENT OF | ) | |
| CORRECTIONS AND CERMAK | ) | |
| HEALTH SERVICES 1-50, and COOK | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TONY LOVE'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Plaintiff Tony Love, by his attorneys, respectfully submits the following Response in Opposition to Defendants Dr. R. Ledvora, Dr. C. Zawitz, Manisha Patel, Barbara Davis, Ms. G. Maeweather, Cynthia Jones, Kimberly Cooper, Andrew DeFuniak, Janet Watts, Dr. C. Colvard, and Calvin Flowers' (collectively, the "Medical Defendants") Motion to Dismiss Plaintiff's Fourth Amended Complaint (the "Motion").

## INTRODUCTION

Mr. Love's Fourth Amended Complaint ("Complaint") sets forth claims against the Medical Defendants[1] pursuant to 42 U.S.C. § 1983 to redress the deprivation of Mr. Love's rights as secured by the United States Constitution, as well as a claim for intentional infliction of emotional distress. The Medical Defendants allege that Mr. Love has failed to state a claim against them and move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). However, Mr. Love's Complaint more than meets the liberal pleading requirements of the Federal Rules of Civil Procedure. The Complaint alleges that, in violation of the Eighth and Fourteenth Amendments, the Medical Defendants had subjective knowledge of Mr. Love's serious medical conditions and that they repeatedly acted with deliberate and conscious indifference to those conditions while he was incarcerated.[2] As discussed herein, Mr. Love has properly pled claims against the Medical Defendants for: (1) deliberate indifference to his serious medical conditions, and (2) intentional infliction of emotional distress. As such, the

---

[1] The Complaint also names Officers Ramos and Villarreal, who are not parties to the Motion, as Defendants.

[2] Mr. Love alleges violations of both the Eighth and Fourteenth Amendments because he was in CCDOC custody as both a pre-trial detainee and as a prisoner post-conviction. The Eighth Amendment's proscription against cruel and unusual punishment is violated when prison officials display "deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment, which is assessed under the same standard as Eighth Amendment deliberate indifference claims. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007).

Medical Defendants have failed to establish any grounds for dismissal of Mr. Love's Complaint, and the Motion must be denied.

## FACTUAL BACKGROUND

On March 13, 2009, Mr. Love was incarcerated in the custody of the Cook County Department of Corrections ("CCDOC"). (Compl. ¶ 32.) At the time he was arrested, Mr. Love was using a knee brace and cane due to a knee injury that he sustained prior to his incarceration. (*Id.*) Upon intake into the CCDOC, Mr. Love informed appropriate personnel that he was diabetic and required insulin. (*Id.* ¶ 66.) During the time that Mr. Love was incarcerated in the CCDOC, Mr. Love filed many grievances requesting treatment for his knee and appropriate care for his diabetes. (*Id.* ¶¶ 26, 34, 43, 46, 49, 54–56, 58, 66, 68, 69, 79, 90, 105.) However, despite informing the appropriate personnel upon intake and filing numerous grievances throughout his incarceration, the Medical Defendants consistently failed to adequately treat Mr. Love's knee injury and his diabetes. (*Id.* ¶¶ 33, 35, 40–47, 50, 51, 53, 55, 57, 59, 60, 62, 66–72.)

Mr. Love saw each of the Medical Defendants on many occasions during his incarceration. (*Id.* ¶¶ 33, 35, 42, 44, 45, 47, 51, 53, 55, 59, 66, 71, 72.) However, none of the Medical Defendants took steps to ensure that Mr. Love's knee or diabetes were properly treated. (*Id.* ¶¶ 33, 35, 42, 44, 45, 47, 51, 53, 55, 59, 66, 71, 72.) Instead, the Medical Defendants took woefully inadequate measures to treat both Mr. Love's knee injury and his diabetes, including recommending that he take over-the-counter pain medications and depriving him of insulin on multiple occasions. (*Id.* ¶¶ 42, 44, 47, 66, 67, 70, 82.) As set forth in detail below, Mr. Love has set forth numerous allegations against *each* of the Medical Defendants that establish that each of them knew of Mr. Love's serious medical conditions and acted with deliberate indifference to these conditions. (*Id.* ¶¶ 33, 35, 42, 44, 45, 47, 51, 53, 55, 59, 66, 71, 72.)

2

Furthermore, in or about October 2010, Mr. Love was incarcerated at the Westville Correctional Facility ("Westville"). (Compl. ¶ 63.) As further evidence of the Medical Defendants' deliberate indifference to his serious knee injury, Mr. Love was scheduled for knee surgery almost immediately after his arrival at Westville and was operated on within approximately three months of his arrival at Westville. (*Id.*)

## **STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). The purpose of a motion to dismiss under Rule 12(b)(6) "is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). Generally, to survive a Rule 12(b)(6) motion, a complaint need only provide the defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009). Moreover, *Twombly* "must not be overread." *Limestone Dev. Corp. v. Vill. of LeMont*, 520 F.3d 797, 803 (7th Cir. 2008). Rather, *Twombly* established "two easy-to-clear-hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the defendant must receive "'fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citations omitted). Second, a court should not grant a motion to

3

dismiss so long as the complaint "plausibly suggest[s] that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* (citations omitted).

## ARGUMENT

It is clear that Mr. Love has properly pled his claims against the Medical Defendants. In Counts I-III of his Complaint, Mr. Love has properly set forth allegations of two serious medical conditions that the Medical Defendants were subjectively aware of and consciously disregarded. In addition, Count IV of the Complaint establishes a claim for intentional infliction of emotional distress. Accordingly, and as discussed herein, the Medical Defendants' Motion must be denied.[3]

**I. MR. LOVE HAS PROPERLY PLED A CLAIM FOR DELIBERATE INDIFFERENCE.**

**A. Legal Standard.**

To establish a claim of deliberate indifference, an inmate must show (1) that he suffers from an objectively serious medical condition, and (2) that a prison official is subjectively aware of his medical condition and consciously disregards it. *Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir. 2008). "Deliberate indifference is unconstitutional 'whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the

---

[3] *See, e.g.*, *Harper v. Dart*, 2011 U.S. Dist. LEXIS 47202 (N.D. Ill. May 3, 2011) (denying motion to dismiss a Section 1983 claim for inadequate medical care in violation of an incarcerated plaintiff's constitutional rights); *Jordan v. Diaz*, 2010 U.S. Dist. LEXIS 137703 (N.D. Ill. Dec. 23, 2010) (same); *Aleman v. Dart*, 2010 U.S. Dist. LEXIS 124088 (N.D. Ill. Nov. 23, 2010) (same); *Oliphant v. Cook County Dep't of Corr.*, 2010 U.S. Dist. LEXIS 102244 (N.D. Ill. Sept. 28, 2010) (same); *Robinson v. Dart*, 2009 U.S. Dist. LEXIS 107278 (N.D. Ill. Nov. 17, 2009) (same); *Boatman v. Dart*, 2009 U.S. Dist. LEXIS 35534 (N.D. Ill. Apr. 20, 2009) (same) ; *Williams v. Macklin*, 2008 U.S. Dist. LEXIS 85995 (N.D. Ill. Oct. 23, 2008) (same); *Taylor v. Rodriguez*, 2007 U.S. Dist. LEXIS 52654 (N.D. Ill. July 20, 2007) (same).

treatment once prescribed.'" *Jordan*, 2010 U.S. Dist. LEXIS 137703, at *8 (quoting *Estelle*, 429 U.S. at 104-05).

      **B.    The Complaint Clearly Demonstrates that Mr. Love Suffered From Two Serious Medical Conditions.**

            1.    *Mr. Love's Knee Injury was a Serious Medical Condition.*

The Medical Defendants' Motion argues that Mr. Love's knee injury was not an objectively serious medical condition. This argument is without merit. According to Seventh Circuit precedent, an objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Greeno*, 414 F.3d at 653). "A medical condition need not be life-threatening to be serious; rather it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). A knee injury can constitute a serious medical condition. *See Jervis v. Mitcheff*, 258 Fed. Appx. 3, 6 (7th Cir. 2007).

The Complaint is replete with allegations regarding the severity of Mr. Love's knee injury. Mr. Love has alleged that he filed numerous grievances explaining the severity of his knee injury and requesting treatment. (Compl. ¶¶ 34, 43, 46, 49, 54, 55, 56, 58, Exs. 1, 2, 4, 5, 6, 7.) Mr. Love has also alleged that his knee injury was diagnosed by three physicians—before, during, and after his confinement at the CCDOC—as mandating treatment, that he had difficultly walking without a knee brace and cane, and that his injury caused him significant pain. (Compl. ¶¶ 31, 32, 38, 46, 47, 50, 55, 57, 62, 63.) Specifically, Mr. Love alleges that the first physician to examine his knee injury at Ingalls Hospital in or about July 2008 "informed [Mr. Love] that he would need surgery." (*Id.* ¶ 31.) On or about November 9, 2009, one of the Medical Defendants,

5

Dr. Zawitz, "told [Mr. Love] that his knee was in poor condition and that he needed surgery." (*Id.* ¶ 55.) In or about October 2010, doctors at Westville Correctional Facility also determined that Mr. Love's knee was in need of surgery. (*Id.* ¶ 63.) Finally, in or about January 2011, while incarcerated at Westville, Mr. Love did in fact receive surgery on his knee. (*Id.*) These facts are sufficient to allege that his knee injury was "diagnosed by a physician as mandating treatment," *Hayes*, 546 F.3d at 522, and that the Medical Defendants' failure to treat his knee resulted in "wanton infliction of pain." *Gayton*, 593 F.3d at 620. Thus, Mr. Love has sufficiently pled that his knee injury constituted a serious medical condition while he was in the custody of the CCDOC.

The Medical Defendants assert that Mr. Love has "pled himself out of court" with respect to the seriousness of his knee injury through Mr. Love's supposed allegations that he did not attempt to obtain surgery for his knee injury during the time between when the injury occurred and when he came into the custody of CCDOC. (Motion at p. 6.) This argument is wholly without merit. While a party "may plead itself out of court by pleading facts that establish an impenetrable defense to its claims," *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008), such an event only occurs "[i]f the plaintiff voluntarily *provides* unnecessary facts in her complaint." *Id.* (emphasis added). Here, the Medical Defendants claim that Mr. Love "pled himself out of court" through his supposed allegation "that he did not even attempt to obtain surgery" for his knee injury. (Motion at p. 6.) However, this supposed allegation is nowhere to be found in the Complaint. In fact, the Complaint does not set forth *any* allegations regarding whether Mr. Love sought treatment for his knee during the period between when the injury occurred and the time when he came into the custody of CCDOC. Accordingly, Mr. Love has not voluntarily provided any allegations so as to plead himself out of court. Moreover, as set

6

forth above, the allegations in the Complaint, including the allegation that Mr. Love ultimately required surgery on his knee, easily establish the serious nature of his condition.

        *2.*     *Mr. Love's Diabetes is a Serious Medical Condition.*

The Medical Defendants do not even attempt to argue that Mr. Love's diabetes is not a serious medical condition. As such, the Court should find that the Medical Defendants have conceded this issue. *LaSalle Bank, N.A. v. City of Oakbrook Terrace*, 2006 U.S. Dist. LEXIS 1337, at *11-12 (N.D. Ill. 2006) (citing *Luellen v. City of E. Chi.*, 350 F.3d 604, 612 n.4 (7th Cir. 2003)) (arguments not raised in an opening brief are waived). Moreover, the Seventh Circuit has explicitly recognized that "[d]iabetes is a serious medical condition." *Bowers v. Milwaukee County Jail Med. Staff*, 52 Fed. Appx. 295, 298 (7th Cir. 2002) (citation omitted).

    **C.**    **The Complaint Establishes that the Medical Defendants Consciously Disregarded Mr. Love's Medical Needs.**

        *1.*     *The Medical Defendants' Knowledge and Conscious Disregard of Mr. Love's Medical Conditions Amount to Deliberate Indifference.*

In order to satisfy the subjective element of a deliberate indifference claim, a plaintiff must allege that "the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Hayes*, 546 F.3d at 522 (quoting *Greeno*, 414 F.3d at 653). The Medical Defendants argue that "Plaintiff has not alleged any actions or inactions by the Medical Defendants that sufficiently demonstrates deliberate indifference to either his knee injury or his diabetes." (Motion at p. 8.) To the contrary, Mr. Love alleges throughout the Complaint that the Medical Defendants were made aware of both of his serious medical conditions and failed to take meaningful action to address them. First, Mr. Love alleges that while in CCDOC custody, he filed multiple grievances related to his knee condition, informed doctors of the deteriorating condition of his knee, experienced extreme difficulty walking, and visited the Medical

7

Defendants on a regular basis. However, despite Mr. Love's many attempts to alert the Medical Defendants about the severity of his knee condition, no attempt was made to treat his knee or schedule him for surgery. (Compl. ¶¶ 34, 40, 41, 43, 46, 49, 54 – 56, 58, 79.) Second, Mr. Love alleges that he filed multiple grievances related to the treatment for his diabetes, and informed the Medical Defendants that he is insulin-dependent. (*Id.* ¶¶ 66 – 69, 70, 90.) However, despite Mr. Love's multiple attempts to alert the Medical Defendants about his diabetes, he was denied insulin for days at a time and did not receive sufficient food in close enough proximity to his insulin shot.[4] (*Id.* ¶¶ 66 – 68, 70.)

Specifically, with respect to each of the Medical Defendants, Mr. Love alleges as follows:

- Dr. R. Ledvora – Mr. Love alleges that while incarcerated he saw Defendant Ledvora regarding his knee injury and his diabetes, however, Ledvora made no attempt to treat Mr. Love's knee or schedule him for surgery, and failed to treat his diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶¶ 59, 72.)

- Dr. C. Zawitz – Mr. Love alleges that while incarcerated he saw Defendant Zawitz regarding his knee injury and, in November 2009, informed Zawitz that his knee was in need of surgery, but Zawitz directed Mr. Love to attend physical therapy for his knee

---

[4] The Medical Defendants argue that they are not "proper parties" to this suit because they "do not distribute food in CCDOC." (Motion at p. 7.) First, this argument is inappropriate on a motion to dismiss, as it relies on facts outside of the Complaint. *See, e.g., Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 772 (N.D. Ill. 2008). Second, this argument ignores the fact that Mr. Love's allegations as to the Medical Defendants' deliberate indifference to his diabetes relate to far more than the distribution of food, as Mr. Love also alleges that the Medical Defendants failed to provide him with insulin for days at a time. (Compl. ¶¶ 66 – 67, 70, 89, 91.) Additionally, at the pleading stage, the court must draw "all reasonable inferences in favor of the plaintiff," *Pisciotta*, 499 F.3d at 633, and it is reasonable to infer that the Medical Defendants, as medical professionals, were in a position to take some action to ensure that Love received adequate treatment for his diabetes.

injury, a wholly inadequate remedy for Mr. Love's knee injury, which required surgery, and failed to ensure that Love received the surgery he needed. (*Id.* ¶¶ 51, 55.)

- Manisha Patel – Mr. Love alleges that, upon intake, he informed Defendant Patel that he needed his brace and cane to walk, however, Patel confiscated Mr. Love's brace and cane and failed to ensure that any substitute was provided to him during his incarceration.[5] (*Id.* ¶ 33.) Patel also took an x-ray of Mr. Love's knee shortly after intake, but failed to ensure that Mr. Love received any treatment for his knee following the x-ray. (*Id.* ¶ 35.) Upon intake, Mr. Love also informed Patel that he was insulin dependant. (*Id.* ¶ 66.) However, Patel failed to take steps to ensure that Mr. Love received his insulin, which resulted in Mr. Love being deprived of insulin for a period of 10 days following his incarceration. (*Id.*)

- Ms. G. Maeweather – Mr. Love alleges that while incarcerated he saw Defendant Maeweather on multiple occasions regarding his knee injury and diabetes, but that Maeweather made no attempt to treat either condition by scheduling Mr. Love for surgery or ensuring that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶¶ 53, 72.)

---

[5] Defendants argue that the Defendants Patel, Davis, Maeweather, Jones, Cooper, DeFuniak, and Watts are not "proper defendants" to this suit because, as physicians' assistants, they "cannot recommend surgery for Plaintiff." (Motion at p. 7.) However, this argument is inappropriate on a motion to dismiss, as it relies on facts outside of the Complaint. *See, e.g., Vulcan Golf*, 552 F. Supp. 2d at 772. In addition, Mr. Love's allegations are not limited to the Medical Defendants' failure to schedule him for surgery. Mr. Love also alleges that the Medical Defendants took no meaningful action whatsoever to address his knee injury. For instance, Mr. Love alleges that the Medical Defendants failed to provide him with a cane or knee brace, failed to treat his serious pain with anything other than wholly inadequate pain medication, and subjected him to physical therapy, which was an entirely inappropriate remedy for his knee condition. (Compl. ¶ 33, 34, 42, 44, 47, 50, 51.) Finally, at the pleadings stage, the Court must "draw all reasonable inferences in favor of the plaintiff, *Pisciotta*, 499 F.3d at 633, and it is reasonable to infer that the Medical Defendants, as medical professionals, were in a position to take some action to ensure that Love received treatment for his knee injury, even if the physicians' assistants were unable to perform the technical act of scheduling Mr. Love for surgery.

- <u>Cynthia Jones</u> – Mr. Love alleges that while incarcerated, he saw Defendant Jones regarding his knee injury and that Jones made no attempt to treat his knee. (*Id.* ¶ 44.) Rather, Jones provided Mr. Love with Motrin, medication wholly inadequate to treat his knee injury, which required surgery. (*Id.*) Mr. Love also alleges that he sought treatment for his diabetes from Jones, however, she failed to treat his diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶ 72.)

- <u>Kimberly Cooper</u> – Mr. Love alleges that while incarcerated he saw Defendant Cooper on multiple occasions regarding his knee injury and diabetes, but that Cooper made no attempt to treat either condition by scheduling Mr. Love for surgery or ensuring that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶¶ 45, 71, 72.)

- <u>Andrew DeFuniak</u> – Mr. Love alleges that while incarcerated he saw Defendant DeFuniak regarding his knee injury. (*Id.* ¶ 50.) Despite making note of Mr. Love's serious knee injury and his need for a brace or a cane, DeFuniak made no attempt to treat Mr. Love's knee or schedule him for surgery. (*Id.*) Mr. Love also alleges that he sought treatment for his diabetes from DeFuniak, however DeFuniak failed to treat his diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶ 72.)

- <u>Janet Watts</u> – Mr. Love alleges that while incarcerated he saw Defendant Watts regarding his knee injury. (*Id.* ¶ 47.) Mr. Love informed Watts of the extreme pain and swelling in his left knee, and that the Motrin he had been previously prescribed was insufficient to relieve the pain in his knee. (*Id.*) However, Watts made no attempt to treat Mr. Love's knee or schedule him for surgery. (*Id.*) Mr. Love also alleges that he sought treatment

10

for his diabetes from Watts, however, Watts failed to treat Mr. Love's diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶ 72.)

- Dr. C. Colvard – Mr. Love alleges that while incarcerated, he saw Defendant Colvard regarding his knee injury. (*Id.* ¶ 42.) Despite noting that Mr. Love had a history of a knee injury, Colvard provided Mr. Love an ACE wrap and Motrin, which were wholly inadequate to Love's serious knee injury. (*Id.*) Mr. Love later complained to Colvard of his extreme pain in his knee, however Colvard failed to treat Mr. Love's knee or schedule Mr. Love for surgery, and instead directed Love to continue taking pain medication. (*Id.* ¶ 57). Mr. Love also alleges that he sought treatment for his diabetes from Colvard, but Colvard failed to treat his diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶ 72.)

- Calvin Flowers – Mr. Love alleges that while incarcerated, he saw Defendant Flowers regarding his knee injury. (*Id.* ¶ 50.) Despite finding that Mr. Love may have a torn tendon in his knee, Flowers made no attempt to treat Mr. Love's knee or schedule him for surgery. (*Id.*) Mr. Love also alleges that he sought treatment for his diabetes from Flowers, but that Flowers failed to treat his diabetes and ensure that he received adequate food in sufficient proximity to his insulin. (*Id.* ¶ 72.)

As set forth above, Mr. Love's Complaint contains more than sufficient allegations to provide the Medical Defendants "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citation omitted). Mr. Love clearly alleges that he informed the Medical Defendants that he had a serious knee injury, that he was insulin-dependent, and that he was not receiving adequate food in sufficient proximity to his insulin. Mr. Love also clearly alleges that the Medical Defendants, collectively and individually, either

took no action to treat his conditions, or provided only woefully inadequate treatment. Therefore, Mr. Love has sufficiently alleged that "the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Hayes*, 546 F.3d at 522 (quoting *Greeno*, 414 F.3d at 653).

> 2. *The Allegations in Mr. Love's Complaint Amount to Far More than a Difference of Opinion Among Medical Personnel.*

The Medical Defendants argue that their actions or inactions, as set forth in the Complaint, amount to nothing more that a difference of opinion with regard to Mr. Love's treatment, and do not amount to deliberate indifference. (Motion at pp. 6-7.) The Court cannot give credence to this argument. While "[a] disagreement with a doctor's medical judgment or even evidence of malpractice generally will not establish deliberate indifference," *Jervis v. Mitcheff*, 258 Fed. Appx. 3, 6 (7th Cir. 2007), "neither will dispensing a modicum of treatment automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment." *Id.* As the Seventh Circuit has recognized in the Section 1983 context, "[d]oing nothing *could* be simple negligence, but it does not stretch the imagination to see that it might also amount to deliberate indifference." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (emphasis in original) (reversing the district court's dismissal of a Section 1983 claim against a medical personnel defendant).

Mr. Love's allegations provide ample support for an inference that the Medical Defendants' conduct did not constitute mere negligence or malpractice, but deliberate indifference. "[A]t the pleading stage, certain denials of treatment can be so blatant as to warrant an inference of deliberate indifference." *Aleman*, 2010 U.S. Dist. LEXIS 124088, at *12 (citation omitted) (denying defendants' motion to dismiss plaintiffs' Section 1983 claim for

inadequate medical care while plaintiff was a pretrial detainee in the CCDOC due to defendants' failure to provide surgery to plaintiff for his broken hand).

Mr. Love's allegations that he suffered a serious knee injury, diagnosed by three different doctors as requiring surgery, and that the Medical Defendants failed to provide him either with surgery or any meaningful treatment constitute a denial of treatment so blatant as to warrant an inference of deliberate indifference. Furthermore, the limited treatment the Medical Defendants did provide—pain medication that was wholly inappropriate to address Mr. Love's extreme pain and physical therapy that actually exacerbated Mr. Love's serious knee condition—was so inadequate, that it certainly supports a reasonable inference that this conduct constituted intentional mistreatment. The contrast between the medical care Mr. Love received from the Medical Defendants and the care he received from Westville Correctional Facility further supports the inference that the Medical Defendants were deliberately indifferent to Mr. Love's condition. (Compl. ¶ 63.) "This contrast does not suggest a simple professional disagreement as to choice of remedies, but the difference between meaningful treatment and non-treatment." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Therefore, Mr. Love has alleged sufficient facts from which a finder of fact could reasonably infer that the Medical Defendants' conduct did not constitute simple negligence or medical malpractice, but deliberate indifference.[6]

## II. THE FOURTH AMENDED COMPLAINT STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The Medical Defendants also claim that Count IV of Mr. Love's Complaint for intentional infliction of emotional distress should be dismissed. However, Mr. Love has properly

---

[6] The Medical Defendants do not even attempt to argue that their actions or inactions with respect to Mr. Love's diabetes constitute a difference of opinion among medical personnel. It is obvious, even to a lay person, that failing to provide an insulin-dependant diabetic his insulin for consecutive days cannot constitute a legitimate course of treatment.

pled a claim for intentional infliction of emotional distress and the Medical Defendants' Motion should be denied as to Count IV. To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must allege: "1) that the defendant's conduct was extreme and outrageous; 2) the defendant either intended his conduct inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and 3) the defendant's conduct in fact caused severe emotional distress." *Graves v. Man Group USA, Inc.*, 479 F. Supp. 2d 850, 856 (N.D. Ill. 2007) (citing *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994)). "Whether conduct could be deemed 'extreme and outrageous' is evaluated objectively based on all of the facts and circumstances." *Mullapudi v. Mercy Hosp.*, 2007 U.S. Dist. LEXIS 93570, at *26-27 (N.D. Ill. Dec. 17, 2007) (citing *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988)). "[A] pattern, course, and accumulation of acts can make an individual's conduct 'sufficiently extreme to be actionable, whereas one instance of such behavior might not be.'" *Cobidge v. City of Chi.*, 2009 U.S. Dist LEXIS 68614, at *39 (N.D. Ill. Aug. 6, 2009) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003)).

Mr. Love clearly alleges sufficient facts to support an allegation of intentional infliction of emotional distress. First, Mr. Love alleges that that the Medical Defendants repeatedly ignored his serious medical conditions, and this conduct constituted extreme and outrageous conduct. (Compl. ¶ 105.) Second, Mr. Love has also pled that the Medical Defendants intended to cause severe emotional distress, or at least knew that there was a high probability that their conduct would cause severe emotional distress. (Compl. ¶ 106.) "Courts have generally found this element to be satisfied either when a defendant's actions, by their very nature, were likely to cause severe distress . . . ." *Honaker v. Smith*, 256 F.3d 477, 494 (7th Cir. 2001). Based upon Mr. Love's allegations that he made the Medical Defendants aware of his serious conditions on

14

multiple occasions, it is reasonable to infer that the Medical Defendants' refusal to treat Mr. Love's medical conditions was likely to cause severe distress. Finally, Mr. Love has alleged that the Medical Defendants' conduct did cause him severe emotional distress, and as a result of the Medical Defendants' conduct, he "has suffered and continues to suffer extreme mental anguish, severe emotional distress, and ongoing medical bills." (Compl. ¶¶ 107, 108.) Accordingly, Mr. Love has easily met the pleading standards for a claim for intentional infliction of emotional distress, and it would be inappropriate for the Court to dismiss Count IV of the Complaint.

## CONCLUSION

For all of the reasons set forth above, Plaintiff Tony Love respectfully requests that this Court deny the Medical Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint.

                Respectfully Submitted,

                TONY LOVE

                By: /s/ Michael C. Andolina
                     One of His Attorneys

Michael C. Andolina
Kathleen L. Holthaus
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax:   (312) 853-7036

Dated: June 2, 2011

## **CERTIFICATE OF SERVICE**

    Kathleen L. Holthaus, an attorney, hereby certifies that she caused a copy of the foregoing **Plaintiff Tony Love's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint** to be served on all counsel through the Court's ECF system on this 2nd day of June, 2011.

                                                               /s/     Kathleen L. Holthaus